Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 6834 | **DATE** | 2/20/2004 |
| **CASE TITLE** | Corinne Cesario Caroselli vs. Allstate Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Allstate's motion for summary judgment is granted, terminating the case. All pending motions are deemed moot by this Memorandum, Opinion and Order. This is a final and appealable order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 23 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 65 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | TSA courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| CORINNE CESARIO CAROSELLI, | ) |
| Plaintiff, | ) |
| v. | ) No. 01 C 6834   FEB 23 2004 |
| ALLSTATE INSURANCE COMPANY, | ) Wayne R. Andersen |
| | ) District Judge |
| Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the defendant Allstate Insurance Company's motion for summary judgement. For the following reasons, the motion for summary judgment is granted.

### BACKGROUND

The following undisputed facts are taken from the parties' Local Rule 56 statements of facts. Plaintiff Corinne Cesario Caroselli began her employment with Allstate in October 1983. In September 1991, Caroselli was diagnosed with fibromyalgia. The symptoms of fibromyalgia consist of, among other things, muscle spasms, pain due to muscle spasms, swelling of tissue, headaches, and stomach problems.

In 1992 after her diagnosis, Caroselli reduced her work schedule to three days a week–Tuesday, Wednesday and Thursday. Although Caroselli has fibromyalgia, she is able to wake up, get out of bed and perform all of the normal morning activities, including using the bathroom, brushing her teeth, bathing, taking her medication, dressing herself and fixing

65

her hair and makeup, without any assistance. She also helps her daughter get ready for school and walks her daughter to the bus stop each morning.

Caroselli regularly performs household chores such as making beds, rinsing and stacking dishes in the dishwasher, straightening up around the house, taking newspapers to the trash, sorting and organizing the family's mail, cooking and doing the laundry. However, Caroselli does need help making the beds and carrying the laundry, and she also cannot lift certain Caphalon pots when she is cooking. During certain limited periods of time, Caroselli experienced greater difficulty in performing some of these tasks. Although it may have taken her longer to accomplish these routine tasks, Caroselli still was able to perform most of these tasks without assistance.

Caroselli also remains able to go for walks and has been able to travel since her diagnosis. Her condition also has not limited her ability to read, either at work or at home, or watch television. She also participates in various exercises programs, including Pilates, in which she has progressed to an advanced level. She also receives massage therapy for her condition. Since her diagnosis, Caroselli has experienced some difficulty with sleeping. However, on average, she receives six hours of sleep per night and by taking a nap during the day, she is able to obtain an average of eight hours sleep in a twenty four hour period.

From 1992 through 2000, Caroselli worked a reduced schedule at Allstate. Caroselli was Senior Marketing Manager for a specific distribution channel at Allstate, the Glenbrook Channel, and was responsible for performing marketing support functions for sales teams in the Glenbrook Channel. In July 2000, Allstate experienced a significant increase in the demand for its financial products and hired additional sales people to sell its financial

products. As a result, Allstate reorganized, and the Senior Marketing Manager was assigned to a distribution channel and became a Channel Manager. After the reorganization, Caroselli's job duties changed and her responsibilities increased dramatically. As a result of the increase in demand for marketing support, Allstate determined that a Channel Manager must be available Monday through Friday.

In August 2000, Caroselli's supervisor advised Caroselli that because of the growth in business and the corresponding increase in demands for the Glenbrook Channel group she would have to work a full time schedule. Caroselli, however, responded that because of her fibromyalgia she could only work three days a week and only Tuesday through Thursday. As an alternative, Caroselli suggested that Allstate hire a "qualified assistant" to help her with projects. However, Caroselli's supervisor did not think this alternative solution would work because it still would mean that Caroselli, as the person ultimately responsible for the production and delivery of the marketing materials and support, would not be available for two days of the week.

From the middle of September 2000 through the middle of October, Caroselli was out of the office on medical leave. When she returned, Caroselli learned that she would be reporting to Maribeth Barrett. In November 2000, Maribeth Barrett was hired to take over Caroselli's position as Channel Manager for the Glenbrook Channel. Caroselli, however, retained her job title and benefits as Senior Marketing Manager, and a majority of her duties and responsibilities remained the same. In February 2001, Caroselli began another medical leave of absence. On July 21, 2003, Allstate discharged Caroselli.

Caroselli has filed a two count complaint against Allstate, alleging a violation of The Americans with Disabilities Act (the "ADA") and intentional infliction of emotional distress. Allstate has moved for summary judgment on both counts.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In considering such a motion, the court accepts as true the evidence set forth by the non-moving party and draws all reasonable inferences in favor of the party opposing the motion. *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir. 1994). The moving party bears the burden of demonstrating an absence of evidence to support the position of the nonmoving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In making its determination, the court does not make credibility determinations or weigh evidence, but only determines "whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoescht Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

### II. Caroselli Is Not Disabled Within the Meaning of the ADA

The ADA prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). A "qualified individual with a

4

disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position...." *Id.* at § 12111(8). Further, a "disability" means "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Id.* at § 12102(2)(A). Caroselli argues that she suffers from a physical impairment, fibromyalgia, which substantially limits one or more major life activities and that she has a record of such impairment. Allstate concedes that Caroselli has a physical impairment but disputes that she is substantially limited in her major life activities or that she has a record of such a disability.

To invoke the protection of the ADA, Caroselli must show that: (1) she has a disability as defined by the ADA; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001); *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 950 (7th Cir.2000). The ADA defines "disability" in three ways: (1) a physical or mental impairment that substantially limits one or more of an individual's major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

To demonstrate that she is substantially limited in a major life activity, Caroselli must establish that she is unable to perform specific major life activities that an average person can perform or that she is significantly restricted in her ability to perform such major life activities. 29 C.F.R. § 1630.2(j)(1). The analysis for determining whether an individual's impairment substantially limits a major life activity has three facets: (1) the nature and severity of the impairment; (2) the duration of the impairment; and (3) the permanent or long-term impact

5

resulting from the impairment. *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 506 n. 3 (7th Cir.1998) (citing 29 C.F.R. § 1630.2(j)(2)). Caroselli claims that she is substantially limited in one or more major life activities, including working, sleeping, standing and certain household chores, and that she is significantly restricted as to the condition, manner and duration in which she can work because she can only work three days a week.

Although Caroselli's fibromyalgia may restrict certain of her life activities, merely having some limitations does not make her disabled under the ADA. An inability to perform a particular job for a particular employer does not establish a substantial limitation on the ability to work. *Skorup v. Modern Door Corp.,* 153 F.3d 512, 514 (7th Cir. 1998). Rather, the impairment must substantially limit employment generally. *Id.*

In *Toyota Motor Mfg. Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002), the Supreme Court held that, when evaluating whether a plaintiff is restricted in performing the major life activity of performing manual tasks, the central inquiry is whether the individual is unable to perform the variety of tasks central to most people's daily lives, and not whether the individual is unable to perform the tasks associated with a specific job. 535 U.S. at 200-01. The Court noted that household chores, bathing and brushing one's teeth are among the functions of daily life that are of central importance to an individual. *Id.* at 201. In *Williams,* the Court ultimately concluded that although the plaintiff's condition caused her to avoid sweeping, quit dancing, occasionally seek help dressing and reduced the amount of time she was able to play with her children, garden and drive long distances, she was not substantially limited in the activities central to most people's daily lives. *Id.* at 202.

This Court does not discount that the evidence shows that fibromyalgia has affected Caroselli's life and that she has had to make some adjustments to cope with her condition. However, this falls short of establishing that she is significantly restricted in performing major life activities. The record shows that Caroselli is able to perform the functions of daily life that are central to most people's lives. She can get herself and her daughter ready in the mornings and can perform the normal morning tasks without assistance. Caroselli also is able to perform various household tasks to care for herself and her family, and she can perform these tasks with minimal assistance. She also is able to attend exercise classes. The adverse effects of her fibromyalgia are not of the nature or level of severity that impose *significant* restrictions on Caroselli's ability to care for herself and her family as compared to an average individual in the general population.

In addition, Caroselli has not produced any evidence to show that her impairment substantially limits her ability to work. Indeed, Caroselli does not dispute that she is able to work three days a week, and she admits that she has not investigated whether any jobs are available outside of Allstate that she could perform working three days a week. Just because Caroselli may be precluded from performing the job of Channel Manager at Allstate does not mean that Caroselli cannot perform many other jobs either within Allstate or for another employer. "It is not enough for the plaintiff to show that her impairment prevented her from performing one narrow job for one employer." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 507 (7th Cir. 1998).

Based on the undisputed facts and viewing the record most favorably to Caroselli, it is the conclusion of this Court that, although she suffers from fibromyalgia, Caroselli is not

7

substantially limited in any major life activities, including, among others, working and caring for herself and her family, and she is not disabled within the meaning of the ADA. Because Caroselli is not disabled within the meaning of the ADA, she does not have a record of such a disability. Thus, Caroselli cannot establish a prima facie case of disability discrimination.

### III.     Caroselli Is Not Qualified for the Channel Manager Position

Even if Caroselli suffered from a qualifying disability, she nevertheless cannot prevail on her ADA claim because the undisputed facts demonstrate that she has declined to perform the essential functions of the Channel Manager position with or without a reasonable accommodation. Caroselli argues that she is qualified for the Channel Manager position because she performed its functions for two years. However, Caroselli was a Senior Marketing Manager for two years and not a Channel Manager. In July 2000, Allstate reorganized and the Senior Marketing Manager was assigned to a distribution channel and became a Channel Manager. Caroselli overlooks the undisputed evidence that after the reorganization her job duties and responsibilities changed and that there was a increase in demand for marketing support which required a Channel Manager to be available Monday through Friday.

An employer is not required to modify, reduce or reallocate the essential functions of a job to accommodate an employee. *Emerson v. Northern States Power Co.*, 256 F.3d 506, 514 (7th Cir. 2001). A full-time schedule can be an essential job function. *DeVito v. Chicago Park District*, 270 F.3d 532, 534 (7th Cir. 2001). A district court will not otherwise second guess an employer's judgment in describing the essential functions of a job. *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 674 (7th Cir. 1998).

Caroselli does not dispute that in August 2000, Allstate informed her that because of the growth in its business and the corresponding increase in the demands on the Glenbrook Channel group that Caroselli as the Channel Manager would need to work a full Monday through Friday workweek. However, Caroselli responded that she was not able to work a full workweek and that she needed to maintain a Tuesday through Thursday work schedule. However, a part-time schedule is not a reasonable accommodation for a full-time job. *DeVito*, 270 F.3d at 533.

The undisputed evidence shows that Allstate determined that, as a result of the increase in the volume of work and client demands, a Channel Manager is required to work a full-time schedule. Caroselli does not dispute that all of the Channel Managers reporting to Caroselli's supervisor work a full-time schedule. Caroselli's insistence that she is unable to work a full workweek Monday through Friday demonstrates that she is not able to perform an essential job function of a Channel Manager, and Allstate is not required to accommodate a part-time schedule for a full-time job. Thus, Caroselli cannot establish a prima facie case of disability discrimination. Finally, because Caroselli is not able to establish a prima facie case of discrimination, her harassment claim based on her alleged disability and her reasonable accommodation claim necessarily fail.

### IV. The Illinois Human Rights Act Preempts Caroselli's State Tort Claim

Count II of Caroselli's complaint alleges the state law tort action for intentional infliction of emotional distress. Allstate argues that Count II is preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101, *et seq.*, because it is "inextricably linked" to a claim for a civil rights violations under the IHRA.

9

The IHRA preempts state tort claims that are "inextricably linked" to a civil rights violation within the meaning of that statute. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Thus, if a state common law claim is in essence one that seeks redress for a "civil rights violation" as defined by the IHRA, this Court lacks jurisdiction to adjudicate the claim. *Id.* A "civil rights violation" occurs when an employee is terminated on the basis of "unlawful discrimination." 775 ILCS 5/2-102. "Unlawful discrimination," in turn, includes "discrimination against a person because of his or her ... handicap." 775 ILCS 5/1-103. The test to determine whether a claim is subject to IHRA preemption was clarified by *Maksimovic v. Tsogalis*, 687 N.E.2d 21 (Ill. App. Ct. 1997). The pivotal question is "whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action." *Tsogalis*, 687 N.E.2d at 23.

In this case, we find that Caroselli's intentional infliction of emotional distress claim is "inextricably linked" to her employment discrimination claim. The factual allegations set forth in the discrimination claim are re-alleged and incorporated by reference as the facts and alleged conduct of Allstate which support Caroselli's claim for intentional infliction of emotional distress. Without considering Allstate's alleged discriminatory conduct, Caroselli has not stated an independent basis for imposing liability for intentional infliction of emotional distress. Thus, we conclude that the intentional infliction of emotional distress claim is inextricably linked to Caroselli's discrimination claim, and the claim is preempted by the IHRA.

## CONCLUSION

For the foregoing reasons, Allstate's motion for summary judgment is granted, terminating the case. All pending motions are deemed moot by this Memorandum Opinion and Order. This is a final and appealable order.

It is so ordered.

                                                                    Wayne R. Andersen
                                                                    United States District Judge

Dated: February 20, 2004